Appeal No. 24-13266-JJ

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## IN RE: THE RENCO GROUP AND THE DOE RUN RESOURCES
## CORPORATION

---

THE RENCO GROUP, INC. AND DOE RUN RESOURCES CORPORATION,
*Petitioner-Appellees*,
v.
VICTOR CAREAGA,
*Respondent-Appellant*

HALPERN SANTOS & PINKERT, P.A.
*Intervenor-Appellant*

RODRIGUEZ TRAMONT & NUNEZ, P.A. AND NAPOLI SHKOLNIK PLLC,
*Intervenors-Appellants*

Appeal from the United States District Court
for the Southern District of Florida
No. 1:22-cv-21115-JAL
Honorable Joan A. Lenard, United States District Judge

---

## INITIAL BRIEF OF INTERVENOR-APPELLANT
## HALPERN SANTOS & PINKERT, P.A.

Nathan D. Stump
Schlichter Bogard, LLP
100 South 4th Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
nstump@uselaws.com
*Attorney for Intervenor-Appellant*
*Halpern Santos & Pinkert, P.A.*

Appeal No. 24-13266-JJ

_____

THE RENCO GROUP, INC., et al.
*Petitioner-Appellees*,
v.

VICTOR CAREAGA, et al.
*Respondent-Appellant*

_____

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Intervenor-Appellant Halpern Santos & Pinkert P.A. submits the following

Certificate of Interested Persons and Corporate Disclosure Statement pursuant to

Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1-1.

**1. Interested Persons**

The name of each person, attorney, association of persons, firm, law firm,

partnership, and corporation that has or may have an interest in the outcome of this

action including subsidiaries, conglomerates, affiliates, parent corporations, public-

traded companies that own 10% or more of a party's stock and any other

identifiable entities related to any party in this case are as follows:

Ayala Law

Bayman, Andrew

Berra, Jr., Thomas

Breakstone, Jay L.T.

Careaga, Victor

D.R. Acquisition Corp.

Damian Valori LLP

Devine Goodman Rasco & Watts-FitzGerald LLP

Dinan, Jay Patrick

Doe Run Cayman Holdings LLC

Doe Run Resources Corporation

Dowd Bennett, LLP

Dowd, Edward, Jr.

Drake, Geoffrey

Dubanevich, William J.

Fernandez, Amanda Lara

Garcia-Menocal & Irias

Garcia-Menocal, Jorge Alejandro

Halpern Santos & Pinkert, P.A.

Halpern, Jay

Hickey, Michael

Honorable Catherine D. Perry

Honorable Joan A. Lenard

Honorable Lauren Fleischer Louis

Honorable Rodney W. Sippel

Icenogle, Denisse

Kaiser, Marvin

King & Spalding, LLP

Kraft, Kristine

Law Offices of William J. Dubanevich

Lewis Rice, LLC

Maura, Eduardo Ayala

Mecias, Angelica

Mestre, Jorge Alejandro

Napoli Shkolnik PLLC

Neal, Albert Bruce

Nunez, Jr., Paulino Antonio

Parker Waichman

Renco Group Inc.

Renfroe, Tracie

Rennert, Ira

Rivero Mestre, LLP

Rodriguez Tramont & Nunez, P.A.

Rodriguez, Francisco Ramon

Schlichter Bogard, LLP

Schlichter, Jerry

Stump, Nathan

Thaler, Louis

Toledo, Carmen

Werner, Michael

Zelms, Jeffrey

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor-Appellant Halpern Santos & Pinkert, S.A. requests oral argument. This appeal involves a complicated procedural history and unusual factual circumstances that this Court will need to understand to properly adjudicate the issues presented, and oral argument will assist the Court in understanding those circumstances.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ............... C-1

Statement Regarding Oral Argument ........................................................................ i

Table of Citations ..................................................................................................... iv

Jurisdictional Statement ........................................................................................ viii

Statement of the Issues ............................................................................................. 1

Statement of the Case ............................................................................................... 1

    I.   Factual Background ......................................................................................... 2

        A.   The Missouri Lawsuits ...................................................................... 2

        B.   Victor Careaga ................................................................................... 3

    II.  Course of Proceedings and Disposition in the Court Below ..................... 3

        A.   The Section 1782 Action ................................................................... 3

        B.   Related Proceedings in the Eastern District of Missouri ............... 5

        C.   Intervention by the Law Firms ........................................................ 7

        D.   The Careaga Privilege Log ............................................................... 8

        E.   Halpern's Motion for Protective Order ......................................... 10

    III. Standard of Review .................................................................................... 13

Summary of the Argument ..................................................................................... 14

[continued on following page]

Argument ................................................................................................ 15

    I.    The district court abused its discretion by refusing to extend attorney work-product protection to the Halpern Contested Documents. ............. 15

        A.    The evidence was sufficient to establish the work-product privilege. ......................................................................... 17

        B.    The district court's reasons for denying Halpern's motion were insufficient and clearly erroneous. ................................................ 19

    II.    The district court abused its discretion by failing to consider Halpern's privilege claims on a document-by-document basis. ............................. 32

    III.  The district court abused its discretion by not conducting a hearing or examining the documents *in camera*. ...................................................... 33

Conclusion ............................................................................................. 36

Certificate of Compliance ...................................................................... 37

Certificate of Service ............................................................................. 38

## TABLE OF CITATIONS

**Cases**

*A.O.A. v. Rennert*,
No. 11-44, 2023 U.S. Dist. LEXIS 10058 (E.D. Mo. Jan. 20, 2023) ............ 3, 23

*Bridgewater v. Carnival Corp.*,
286 F.R.D. 636 (S.D. Fla. 2011) ................................................................. 27, 33

*Burrow v. Forjas Taurus S.A.*,
334 F. Supp. 3d 1222 (S.D. Fla. 2018) .............................................................. 35

*Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*,
263 F.3d 1304 (11th Cir. 2001) ........................................................................ 13

*Cleary v. Kaleida Health*,
No. 22-26, 2024 U.S. Dist. LEXIS 216311 (W.D.N.Y. Nov. 27, 2024) ........... 27

*Consorcio Ecuatoriano de Telecom. S.A. v. JAS Forwarding (USA), Inc.*,
747 F.3d 1262 (11th Cir. 2014) ................................................................ viii, 13

*Cox v. Adm'r U.S. Steel & Carnegie*,
17 F.3d 1386 (11th Cir. 1994) .................................................................... 16, 35

*Diamond Resorts U.S. Collection Dev., Ltd. Liab. Co. v. US Consumer Attys, P.A.*,
519 F. Supp. 3d 1184 (S.D. Fla. 2021) ...................................................... 28, 31

*Dowdell v. Apopka*,
698 F.2d 1181 (11th Cir. 1983) ........................................................................ 25

*Drummond Co. v. Collingsworth*,
816 F.3d 1319 (11th Cir. 2016) .................................................................. 21, 32

*Drummond Co. v. Conrad & Scherer, LLP*,
885 F.3d 1324 (11th Cir. 2018) ................................................. 17, 27, 28, 35

*EEOC v. CRST Van Expedited, Inc.*,
No. 07-0095, 2009 U.S. Dist. LEXIS 3621 (N.D. Iowa Jan. 20, 2009) ........... 25

*EEOC v. Frontier Hot-Dip Galvanizing, Inc.*,
No. 16-691, 2023 U.S. Dist. LEXIS 135971 (W.D.N.Y. Aug. 4, 2023) ........... 27

*Est. of M.R. v. Or. Dep't of Hum. Servs.*,
No. 23-705, 2024 U.S. Dist. LEXIS 64536 (D. Or. Apr. 9, 2024) .................... 27

*Frank LLP v. Consumer Fin. Prot. Bureau*,
288 F. Supp. 3d 46 (D.D.C. 2017) .................................................................... 26

iv

*FTC v. Grolier, Inc.*,
   462 U.S. 19 (1983) .......................................................................... 26

*Glock v. Glock, Inc.*,
   797 F.3d 1002 (11th Cir. 2015) ...................................................... 31

*Gross v. Agri Stats, Inc.*,
   No. 19-8318, 2022 U.S. Dist. LEXIS 46510 (N.D. Ill. Mar. 16, 2022) ........... 25

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
   633 F.3d 591 (7th Cir. 2011) ......................................................... viii

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ............................................... 15, 27, 28, 35

*Holladay v. Royal Caribbean Cruises, Ltd.*,
   333 F.R.D. 588 (S.D. Fla. 2019) ...................................................... 30

*Holladay v. Royal Caribbean Cruises, Ltd.*,
   334 F.R.D. 628 (S.D. Fla. 2020) ................................................ 23, 34

*Hulley Enters. v. Baker Botts LLP*,
   286 F. Supp. 3d 1 (D.D.C. 2017) ..................................................... 21

*In re Bertucci Contracting Co., LLC*,
   No. 12-664, 2014 U.S. Dist. LEXIS 72986 (E.D. La. May 27, 2014) ............. 25

*In re Fink*,
   876 F.2d 84 (11th Cir. 1989) ........................................................ ix

*In re Ford Motor Co.*,
   345 F.3d 1315 (11th Cir. 2003) ...................................................... ix

*In re Furstenberg Fin. SAS v. Litai Assets LLC*,
   877 F.3d 1031 (11th Cir. 2017) .................................................... viii

*In re Grand Jury Investigation (SEALED)*,
   119 F.4th 929, 2024 U.S. App. LEXIS 26134 (11th Cir. 2024) ................... ix

*In re Grand Jury Subpoena*,
   831 F.2d 225 (11th Cir. 1987) ..................................... 21, 32, 33, 35

*In re Letter of Request for Judicial Assistance etc.*,
   669 F. Supp. 403 (S.D. Fla. 1987) .................................................. 31

*IQRIS Techs. LLC v. Point Blank Enters.*,
   No. 21-61976, 2023 U.S. Dist. LEXIS 2282 (S.D. Fla. Jan. 5, 2023) ............. 34

*Johnson v. Gross*,
   611 F. App'x 544 (11th Cir. 2015) .................................................. 20

*Julie A. Su v. Arise Virtual Sols., Inc.*,
    No. 23-61246, 2024 U.S. Dist. LEXIS 106957 (S.D. Fla. June 17, 2024) ........ 35

*Klosin v. E.I. du Pont de Nemours & Co.*,
    561 F. Supp. 3d 343 (W.D.N.Y. 2021) ................................................................ 33

*Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*,
    295 F.R.D. 550 (S.D. Fla. 2013) ........................................................................ 34

*Miccosukee Tribe of Indians of Fla. v. United States*,
    516 F.3d 1235 (11th Cir. 2008) ........................................................... 15, 16, 33

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ........................................................................................... 27

*Mitre Sports Int'l v. HBO*,
    No. 08-9117, 2010 U.S. Dist. LEXIS 162104 (S.D.N.Y. Oct. 14, 2010) .......... 27

*Perlman v. United States*,
    247 U.S. 7 (1918) .............................................................................................. viii

*Rabushka ex rel. United States v. Crane Co.*,
    122 F.3d 559 (8th Cir. 1997) ............................................................................. 18

*Reid v. Doe Run Res. Corp.*,
    110 F.4th 1049 (8th Cir. 2024) ............................................................................ 3

*Republic of Ecuador v. Hinchee*,
    741 F.3d 1185 (11th Cir. 2013) ................................................................... 21, 33

*United Kingdom v. United States*,
    238 F.3d 1312 (11th Cir. 2001) .......................................................... 13, 21, 33

*United States EEOC v. Pioneer Hotel, Inc.*,
    No. 11-1588, 2014 U.S. Dist. LEXIS 142735 (D. Nev. Oct. 6, 2014) .............. 25

*United States v. Bouchard Transp.*,
    No. 08-4490, 2010 U.S. Dist. LEXIS 37438 (E.D.N.Y. Apr. 14, 2010) ........... 23

*United States v. Davis*,
    636 F.2d 1028 (5th Cir. 1981) ........................................................................... 23

*United States v. Jicarilla Apache Nation*,
    564 U.S. 162 (2011) ........................................................................................... 32

*United States v. Korf*,
    11 F.4th 1235 (11th Cir. 2021) .................................................................... 13, 15

*United States v. McQuillan*,
    No. 93-134, 1994 U.S. Dist. LEXIS 11487 (M.D. Fla. Aug. 5, 1994) ............. 32

*United States v. Moore, Ingram, Johnson & Steele, LLP*,
No. 21-10341, 2022 U.S. App. LEXIS 21728 (11th Cir. Aug. 5, 2022)............ 20

*United States v. Nobles*,
422 U.S. 225 (1975) ............................................................................................ 35

*United States v. Zolin*,
491 U.S. 554 (1989) ............................................................................................ 33

*Wreal, LLC v. Amazon.com, Inc.*,
840 F.3d 1244 (11th Cir. 2016) ......................................................................... 13

**Statutes**

28 U.S.C. § 1291 ...............................................................................................viii

28 U.S.C. § 1331 ...............................................................................................viii

28 U.S.C. § 1782 ...............................................................................................viii

28 U.S.C. § 1782(a) ............................................................................................ 15

28 U.S.C. § 636(b)(1)(A) ................................................................................... 12

**Rules**

Circuit Rule 12.1-1(a) ........................................................................................ 13

Fed. R. App. P. 3(c)(4) and (5) .......................................................................... 12

Fed. R. Civ. P. 26 ............................................................................................... 26

Fed. R. Civ. P. 26(b)(3) ..................................................................................... 26

Fed. R. Civ. P. 26(b)(3)(A) .................................................................... 15, 17, 28

Fed. R. Civ. P. 26(b)(3)(B) ......................................................................... 16, 32

Fed. R. Civ. P. 26(c)(1) ...................................................................................... 31

Fed. R. Civ. P. 26(b)(3) ..................................................................................... 15

Fed. R. Civ. P. 60(b) .......................................................................................... 12

S.D. Fla. L.R. 26.1(e)(2)(C) .............................................................................. 24

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. Civ. § 2024 (3d ed. 2019)........................... 31

## JURISDICTIONAL STATEMENT

This appeal concerns the denial of a motion for protective order filed by Intervenor-Appellant Halpern Santos & Pinkert, P.A. ("Halpern") in a Section 1782 discovery proceeding brought by Appellees, The Renco Group Inc. and The Doe Run Resources Corporation (together, "Petitioners"). As this matter arose under 28 U.S.C. § 1782, the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. A district court's discovery orders under Section 1782(a) are immediately appealable. *In re Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1034 (11th Cir. 2017); *see Consorcio Ecuatoriano de Telecom. S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1274 n.6 (11th Cir. 2014) (observing that "when no further proceedings are contemplated" in a Section 1782 action, "the court's last order, even if it is a discovery order, is an appealable final order") (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593 (7th Cir. 2011)).

Even if the orders denying Halpern's motion for a protective order were not final, this Court would still have jurisdiction to hear Halpern's appeal under the *Perlman* doctrine. Established in *Perlman v. United States*, 247 U.S. 7, 12-13 (1918), the doctrine "protects privilege holders who are not the target of a subpoena" by allowing "immediate appellate review of an order enforcing a

subpoena when the objector was not the party subject to the subpoena." *In re Grand Jury Investigation (SEALED)*, 119 F.4th 929, 2024 U.S. App. LEXIS 26134, *12-13 (11th Cir. 2024). "The point of the exception is to give an objecting party a chance to raise its arguments on appeal." *Id.* at *16; *cf. generally In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) (noting that mandamus may be used to "correct a clear abuse of discretion," including where a discovery order would "compromise a claim of privilege" (quoting *In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989))).

## STATEMENT OF THE ISSUES

1.    Whether the district court abused its discretion when it found that, despite the submission of a privilege log and affidavits from counsel, none of the documents contested by Halpern were shielded from disclosure by the attorney work-product doctrine or the attorney-client privilege.

2.    Whether the district court abused its discretion by failing to consider Halpern's privilege claims on a document-by-document basis.

3.    Whether the district court abused its discretion by reaching its privilege determination without holding a hearing or conducting an *in camera* inspection of the documents contested by Halpern.

## STATEMENT OF THE CASE

In this § 1782 action, Petitioners are seeking discovery to aid a criminal investigation they initiated in the Republic of Peru. *See* Doc. 1 (application).[1] The district court authorized Petitioners to obtain documents and testimony from Appellant, Victor Careaga ("Careaga"), a Southern District of Florida resident and former Florida attorney. Doc. 8; *see* Doc. 78 at 2. Halpern subsequently intervened and moved for a protective order, asserting attorney-client privilege and attorney

───────────────

[1] All references to "Doc. __" are to the electronic case filing (ECF) docket numbers in the district court. References to "Dkt. __" are to the ECF docket numbers in this Court. All page number references are to the ECF page numbers.

work-product protections. Doc. 57. The district court found that Halpern had

failed to substantiate its claims of privilege and denied Halpern's motion in a

series of orders. Docs. 78, 98, 106. It is from those orders that Halpern appeals.

## I.    Factual Background

### A.    The Missouri Lawsuits

Halpern is a law firm in Coral Gables, Florida. Doc. 57 at 1. Along with its

St. Louis-based co-counsel, Schlichter Bogard LLP, Halpern represents

approximately 1,400 Peruvian plaintiffs in long-running litigation against

Petitioners and others now pending before the Honorable Catherine D. Perry in

the Eastern District of Missouri, *A.O.A. v. Rennert*, No. 4:11-cv-44-CDP

(commonly referred to as "*Reid*"). *Id.* at 1-2.

Petitioners are also defendants in a parallel but separate set of consolidated

cases pending in the Eastern District of Missouri before the Honorable Rodney W.

Sippel, *J.Y.C.C. v. Doe Run Resources Corp.,* No. 4:15-cv-1704-RWS (commonly

referred to as "*Collins*"). *Id.* at 2-3. Intervenor-Appellants Rodriguez Tramont +

Nuñez, P.A. ("Rodriguez") and Napoli Shkolnik PLLC ("Napoli") are the law

firms representing the *Collins* plaintiffs. Doc. 20-1 at 3.

In both *Reid* and *Collins* (collectively, the "Missouri Lawsuits"), the

plaintiffs are seeking damages for injuries they suffered as a result of chronic

exposure to lead and other toxins emitted from Petitioners' smelter and refinery

2

complex in La Oroya, Peru, from 1997 to 2009. Doc. 45 at 3. The *Reid* cases have a "long and complicated history" beginning in 2007 and are only now at the summary judgment stage. *See A.O.A. v. Rennert*, No. 11-44, 2023 U.S. Dist. LEXIS 10058, at *5, *83 (E.D. Mo. Jan. 20, 2023); *see also generally Reid v. Doe Run Res. Corp.*, 110 F.4th 1049 (8th Cir. 2024) (affirming district court's decision not to dismiss the case based on principles of international comity).

### B.    Victor Careaga

From 2006 to April 2013, Careaga was a licensed Florida attorney who served as co-counsel for the *Reid* plaintiffs. *See* Doc. 54-1 at 3-4 (¶¶ 10-11). After April 2013, Careaga disassociated from Halpern and no longer supported the *Reid* cases. *See* Doc. 78 at 16 n.10. He was subsequently disbarred for unrelated conduct. Doc. 54-1 at 3-4 (¶ 11). His involvement in the Missouri Lawsuits since April 2013 has been limited to the *Collins* cases. *See id.* at 4 (¶ 12); Doc. 1 at 4.

## II.    Course of Proceedings and Disposition in the Court Below

### A.    The Section 1782 Action

On April 12, 2022, Petitioners brought this Section 1782 action to obtain documents and testimony from Careaga for use in a criminal investigation they initiated in Peru. Doc. 1; Doc. 20-1 at 7. Petitioners' *ex parte* application described the conduct under investigation as "a conspiracy to defraud Renco, Doe

Run and the courts of the United States, in which scheme Careaga participated and about which Careaga possesses relevant evidence." Doc. 1 at 1.

According to Petitioners, the alleged fraud comprised "a network of Peruvian plaintiff 'recruiters' and document collectors" supervised by Careaga, who "recruited some Peruvian citizens to claim that they were injured by emissions from a metallurgical complex in La Oroya, Peru." *Id.* at 2. Petitioners charged that "Careaga's recruiters and others then manipulated, doctored, or fabricated 'evidence' to support many of those claims." *Id.* Careaga's alleged involvement was "overseeing the fabrication of fake documents" and the alleged fraudulent recruitment efforts. *Id.* at 2, 4. The application did not provide a timeline for the alleged criminal conduct and did not distinguish between *Reid* and *Collins* in its allegations.[2] *See generally id.*

Petitioners sought to depose Careaga about his work on the Missouri Lawsuits and subpoenaed him to produce a broad array of related documents. *See* Doc. 1-2. Among other things, the subpoena sought documents pertaining to "the recruitment of plaintiffs in Peru," including any instructions Careaga received from the U.S. law firms (*id.* at 11); counsel's "methods" and "strategies" for

---

[2] On April 29, 2022, Petitioners sued Careaga in Florida state court for malicious prosecution, based on substantially the same alleged fraud, in connection with certain plaintiffs dismissed from the *Collins* cases. *See generally* Doc. 5-1.

4

recruiting plaintiffs (*id.* at 11-12); records of payments Careaga received from the U.S. law firms "in connection with any activity in Peru relating to the Missouri lawsuits" (*id.* at 13); and Careaga's travel records for trips to Peru connected to "recruiting or obtaining records from or about any plaintiff or potential plaintiff" (*id.* at 14). The subpoena expressly sought correspondence between Careaga and "anyone else involved in the Missouri lawsuits," including Halpern and the other U.S. firms. *Id.* at 11; *see also id.* at 7 (defining "U.S. Law Firms" to include Halpern and Schlichter Bogard).

On June 8, 2022, the district court granted Petitioners' *ex parte* application, authorizing the requested discovery from Careaga "for use in a pending, confidential criminal investigation in Peru concerning a conspiracy to defraud Renco, Doe Run, and the courts of the United States." Doc. 8. Careaga objected to the subpoena, asserting that it sought "testimony and documents … protected by the attorney client privilege or work product doctrines[.]" Doc. 10 at 2.

## B.    Related Proceedings in the Eastern District of Missouri

Before initiating this § 1782 proceeding, Petitioners attempted to obtain substantially the same discovery in the *Collins* cases. *See* Doc. 20-1 at 6, 10. On March 24, 2022, Judge Sippel denied Petitioners' broad sweeping requests and ordered targeted discovery of 108 plaintiffs in the initial trial pool. *See id.* at 7-8; Doc. 38 at 15. Less than three weeks later, Petitioners filed this action. Doc. 1.

5

On July 13, 2022, Rodriguez and Napoli filed a motion in *Collins* under the All Writs Act, 28 U.S.C. § 1651(a), seeking to enjoin this § 1782 action from moving forward. *See* Doc. 20-1 at 10.

On July 19, 2022, Judge Sippel held a status conference in the *Collins* cases and addressed the subpoena (Doc. 1-2), noting that by Petitioners' own admission, it had "the potential to invade the attorney-client privilege." Doc. 20-9 at 22 of 27. Acknowledging that the *Reid* cases before Judge Perry had advanced to the summary judgment stage and that "it's of great concern if the attorney-client privilege is invaded in her cases as well as my case," Judge Sippel indicated that he and Judge Perry would hold a joint hearing on the matter. *Id.* at 23. He also warned Petitioners' counsel, "there will be consequences here if ... the attorney-client privilege in this case was breached by conduct in other courts…." *Id.* at 25.

On October 28, 2022, Judges Perry and Sippel held a joint hearing to consider whether to enjoin this § 1782 proceeding in the Southern District of Florida. *See* Doc. 12-1. When Judge Perry asked Petitioners' counsel about potential attorney-client privilege issues arising in this action, he admitted the subpoena was "very, very broad" but expressed confidence that any privilege issues would be raised by plaintiffs' counsel, "who are there to protect those interests." *Id.* at 53. He further predicted that the law firms would seek to intervene and file motions for protective orders. *Id.* at 44-46.

6

Following the hearing, Judge Sippel entered an order memorializing Petitioners' representation that discovery in this § 1782 action would be limited to "plaintiffs whose claims have been dismissed from the cases in this Court." Doc. 20-11 at 5. Judge Sippel's order further reflected Petitioners' admission "that some of their discovery requests may initially be overbroad seeking information about the recruitment of all plaintiffs" and "that any overbroad requests would be subject to attorney-client and work-product privilege objections that may be asserted and submitted to the judges in the respective Florida cases." *Id.*

### C.     Intervention by the Law Firms

On May 26, 2023, Rodriguez and Napoli were permitted to intervene in this § 1782 action to assert the work-product privilege. Doc. 29. A ruling on their motion for a protective order was initially deferred. *See id.* at 16. On June 15, 2023, the assigned magistrate judge in the Southern District of Florida held a hearing on the motion, wherein she set a deadline of July 10, 2023, for Careaga to provide responsive documents to Rodriguez and Napoli, and a deadline of July 14, 2023, for Rodriguez and Napoli to produce a privilege log. Doc. 38 at 41-42.

On June 23, 2023, Petitioners re-issued their subpoena per court order (*see id.* at 48-49), setting Careaga's deposition for August 10, 2023. Doc. 51-1 ("Subpoena"). The re-issued Subpoena explained that discovery was not being sought regarding "any plaintiff whose claim is currently pending" in the Missouri

7

Lawsuits, but only plaintiffs whose claims were dismissed. *Id.* at 12. The district court acknowledged that this effectively limited discovery to "cases involving former plaintiffs." Doc. 59 at 12 n.11. The Subpoena also removed Request No. 17, which concerned recordings or notes of meetings with potential plaintiffs in Peru. *See* Doc. 51-1 at 12, 15; Doc. 38 at 7. No other material changes were made. *Compare* Doc. 51-1 at 12-15; *with* Doc. 1-2 at 11-14.

On July 10, 2023, Halpern filed a motion to intervene in this action to invoke work-product protection and assert attorney-client privilege on behalf of Halpern's current and former clients in the *Reid* cases. Doc. 45. Halpern's motion to intervene was granted on August 9, 2023. Doc. 59; *see* Doc. 78 at 3, 9.

### D.    The Careaga Privilege Log

As instructed by the court (*see* Doc. 49-1 at 16), Careaga searched his records for documents responsive to the Subpoena and scanned them, resulting in the creation of 30 PDF files. *See* Doc. 57 at 6; *see also* Doc. 49-1 at 19-20. On July 14, 2023, with assistance from Halpern and Schlichter Bogard, Careaga produced a four-page privilege log (the "Careaga Privilege Log"), setting forth descriptive information about the 30 files and the basis for withholding them under the attorney-client privilege and/or the work-product doctrine. Doc. 57 at 6; Doc. 57-1 (Careaga Priv. Log). The files are individually numbered and range in length from one page to over 100 pages. *See* Doc. 57-1.

8

The Careaga Privilege Log includes documents that generally fall into one of the following six categories:

> (1)    internal correspondence among co-counsel for the *Reid* plaintiffs that reflects the substance of privileged and confidential attorney-client communications;
>
> (2)    draft pleadings, forms, and other documents prepared by counsel;
>
> (3)    records of Careaga's travel to Peru and travel-related expenses to meet with clients and prospective clients;
>
> (4)    records generated by counsel reflecting payments to attorneys and their agents for litigation-related services and associated expenses;
>
> (5)    lists of client names and names of other Peruvians, sometimes including other personal identifying information; and
>
> (6)    handwritten notes of attorneys reflecting client and/or case-related information.

Doc. 57 at 8-9; *see* Doc. 57-1.

On July 31, 2023, before Halpern had been permitted to intervene, the district court held a discovery hearing and ordered each privilege holder to file a motion to sustain the assertion of privilege no later than August 4. *See* Doc. 56. That same day, Petitioners' counsel filed a motion in the Eastern District of Missouri seeking sanctions against plaintiffs' counsel in both *Collins* and *Reid*,

based on a repackaged account of the allegations of criminal conduct under investigation in Peru. *See* Doc. 57-2. On August 3, 2023, Judge Perry entered an order striking the sanctions motion and all related filings from the docket on the grounds that Petitioners' counsel had exceeded the bounds of his limited admission to the district court. *See* Doc. 57-3.

### E. Halpern's Motion for Protective Order

On August 4, 2023, while its motion to intervene was still pending, Halpern moved for a protective order, asserting that all documents identified on the Careaga Privilege Log (collectively, the "Halpern Contested Documents") were shielded from disclosure under the attorney work-product doctrine and/or the attorney-client privilege. Doc. 57. Rodriguez and Napoli filed a separate, renewed motion for protective order asserting similar privileges and concerns. *See* Doc. 58. Petitioners opposed both motions in a single filing. Doc. 63.

Halpern's motion relied in part on a sworn, notarized affidavit signed by Careaga on July 28, 2023. *See* Doc. 54-1 ("Careaga Affidavit"). In his affidavit, Careaga explained that in early 2006, as an active member of the Florida bar, he "began investigating the potential claims of residents of La Oroya, Peru and surrounding areas" against Petitioners for "exposure to toxic lead and other toxic metals caused by the operation of [their] polymetallic smelter." *Id.* at 2 (¶ 7).

10

Careaga attested that his "investigation was conducted jointly with co-counsel, Jay Halpern, Esq., and continued through the remainder of the year 2006." *Id.*

Careaga attested that "in anticipation of litigation," he "began to develop the strategy and framework for identifying and communicating with prospective Peruvian clients to properly bring and litigate their claims in the United States." *Id.* at 3 (¶ 9). After that, he started traveling to Peru "to approach clients, inform them of their potential eligibility to become plaintiffs in Missouri litigation, and … sign[] up clients." *Id.* "Hundreds of clients" were signed up by "late 2006," and by the end of 2006, Schlichter Bogard "had agreed to co-counsel the case" and "institute legal action in Missouri." *Id.* (¶ 10). "Suit was soon thereafter filed … in Missouri state court[.]" *Id.* Careaga continued to work on the litigation "in a co-counsel capacity … on an uninterrupted basis from 2006 until April, 2013," after which the relationship ended due to Careaga's "imminent disbarment" for unrelated reasons. *Id.* at 3-4 (¶ 11).

In support of its request for a protective order, Halpern also submitted an affidavit from its principal attorney, Jay Halpern. *See* Doc. 66-1 ("Halpern Affidavit"). Among other things, Mr. Halpern attested to the fact that he had personally reviewed the documents listed on the Careaga Privilege Log and found that they "contain attorney work product and the substance of privileged attorney-

client communications pertaining to hundreds of current plaintiffs in the *Reid* cases…." *Id.* at 2 (¶ 9).

On November 29, 2023, the Honorable Lauren F. Louis, United States Magistrate Judge, entered an Order Regarding Assertions of Privilege (Doc. 78) that denied Halpern's motion for protective order (Doc. 57), the motion for protective order filed by Rodriguez and Napoli (Doc. 58), and a motion to seal filed by Petitioners (Doc. 65). The order was issued without the benefit of a hearing or *in camera* review. *See* Doc. 81 at 4; *see also* Doc. 109 at 35-36.

The intervenor law firms timely appealed the magistrate judge's decision to the district judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Magistrate Judge Rule 4(a)(1). *See* Doc. 81 (Halpern's appeal); Doc. 82 (Rodriguez and Napoli appeal). The Honorable Joan A. Lenard, United States District Judge, denied both appeals on September 30, 2024. Doc. 98. Reasons for the denial were explained more fully in a subsequent order, entered October 16, 2024.[3] Doc. 106.

On October 8, 2024, Halpern timely filed its notice of appeal to this Court. Doc. 100. After initiating this appeal, Halpern filed a motion for reconsideration in the district court, pursuant to Federal Rule of Civil Procedure 60(b), seeking to partially vacate the court's orders (Docs. 8, 98, and 106) based on newly

---

[3] Doc. 106 is properly part of the record on appeal because it supplements and explains the order that Halpern has appealed. *See* Fed. R. App. P. 3(c)(4) and (5).

discovered evidence, a change in controlling law, and other good grounds. Doc. 140. As of this writing, that motion remains pending. In compliance with Circuit Rule 12.1-1(a), Halpern filed a motion to stay this appeal until the motion for reconsideration is resolved in the district court. *See* Dkt. 34-1. This Court denied Halpern's motion. Dkt. 36.

## III.   Standard of Review

This Court reviews the denial of a protective order for an abuse of discretion. *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). A district court abuses its discretion if its factual findings are clearly erroneous, it follows improper procedures, it applies the incorrect legal standard, or "it applies the law in an unreasonable or incorrect manner." *United States v. Korf*, 11 F.4th 1235, 1248 (11th Cir. 2021) (quoting *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016)). The same deferential standard applies when reviewing a district court's ordinary discovery rulings, including "whether the foundation for a claim of privilege has been established," as well as the decision to honor or deny a section 1782 discovery request. *Consorcio*, 747 F.3d at 1268 (citing *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001)).

13

## SUMMARY OF THE ARGUMENT

The district court abused its discretion when it denied Halpern's motion for a protective order. Halpern's assertions of work-product privilege were sufficiently substantiated by the Careaga Affidavit (Doc. 54-1), the Careaga Privilege Log (Doc. 57-1), and the Halpern Affidavit (Doc. 66-1). Even if the Log was deficient in certain respects, the district court identified no valid evidentiary or legal basis to deny privilege protections to the Halpern Contested Documents. More careful consideration was warranted under the circumstances, particularly where the Subpoena overtly sought the internal records of Petitioners' litigation adversaries.

The district court also abused its discretion by failing to consider Halpern's claims of privilege on a document-by-document basis. Rather than considering each document separately, the court denied all asserted protections to all of the logged documents in broadbrush fashion. This was reversible error. To address its concerns about the Log entries, the court could have ordered Halpern to produce an amended privilege log. In any event, and in accordance with applicable precedent, the court should have held a hearing or examined the documents *in camera*. It was an abuse of discretion to simply deny all work-product protections and order the documents to be produced without any safeguards. The judgment below should be reversed and the matter remanded for further proceedings.

14

## ARGUMENT

Reversal is warranted to ensure the discovery process is lawfully conducted and all applicable privileges are maintained. In a § 1782 proceeding such as this one, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a). The attorney-client and work-product privileges, in particular, are "deeply important and must be respected." *Korf*, 11 F.4th at 1249.

**I.    The district court abused its discretion by refusing to extend attorney work-product protection to the Halpern Contested Documents.**

It was an abuse of discretion for the district court to refuse to apply work-product protection to the 30 files identified on the Careaga Privilege Log. *See* Doc. 78 at 15. First established in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work-product privilege generally protects documents prepared by an attorney in anticipation of litigation. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008). Codified in Federal Rule of Civil Procedure 26(b)(3), the rule prohibits discovery of any document or tangible thing prepared in anticipation of litigation, or for trial, by or for another party or its representative. Fed. R. Civ. P. 26(b)(3)(A). Such materials are not discoverable unless the party requesting them "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their

15

substantial equivalent by other means." *Id.*; *see Miccosukee Tribe*, 516 F.3d at 1263. Even then, the rule requires courts to "protect against disclosure" any "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such "opinion work-product" "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994).

The district court refused to grant Halpern's motion for protective order on the grounds that the Careaga Privilege Log was "lacking" and Halpern had failed to "substantiate its claims that the items in the privilege log[] were what they purported to be." Doc. 106 at 12-13. Under the circumstances, that decision was unreasonable and an abuse of the court's discretion. The evidence before the district court included a detailed privilege log and two sworn affidavits, all of which supported Halpern's assertion that the documents were created for litigation. No contrary evidence was submitted. On that record, it was error for the court to find that the documents were all created for a business purpose, rather than for litigation. The district court also erred by failing to consider the scope of the Subpoena and the broader context of the action, both of which showed that Petitioners were, in fact, openly and deliberately seeking the attorney work-product of their litigation rivals.

16

### A.    The evidence was sufficient to establish the work-product privilege.

Halpern's assertions of work-product protections were amply supported by three pieces of evidence: (1) the Careaga Affidavit (Doc. 54-1); (2) the Careaga Privilege Log (Doc. 57-1); and (3) the Halpern Affidavit (Doc. 66-1). Together, these documents were sufficient to establish by a preponderance of the evidence that at least *some* of the Halpern Contested Documents were created by or for an attorney in anticipation of litigation. Such documents constituted attorney work-product that should have been shielded from discovery. *See* Fed. R. Civ. P. 26(b)(3)(A); *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334-35 (11th Cir. 2018) ("Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation.").

Careaga's affidavit established that at all times and in all activities relevant to the *Reid* cases, Careaga was co-counsel for the plaintiffs, acting in his capacity as a licensed attorney admitted to practice law in Florida. *See* Doc. 54-1 at 2-4 (¶¶5, 7-11). It was undisputed that Careaga's involvement as an attorney in the *Reid* cases spanned 2006 to 2013 and ended before he was disbarred. *See id.* at 3-4 (¶ 11); Doc. 78 at 15-16 & n.10. His roles involved "investigat[ing] the potential of bringing claims against Petitioners" and traveling to Peru to sign up potential plaintiffs. Doc. 78 at 15-16. Careaga further attested that from the time he began

investigating the potential of bringing claims, he believed that "everything [he] would do could be in anticipation of litigation that would be brought in the United States." *Id.* at 15 (quoting Doc. 54-1 at 2-3 (¶ 8)). The magistrate judge found that, according to Careaga's affidavit, "he was acting in his capacity as a licensed attorney when ***the documents were created in anticipation of litigation*** against Petitioners in the Eastern District of Missouri." *Id.* (emphasis added). Petitioners did not offer any evidence to contradict that testimony.

The Careaga Privilege Log also provided evidence that the documents were created in furtherance of bringing lawsuits against Petitioners. *Cf. Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (factual basis was established through a detailed privilege log and accompanying explanatory affidavit from counsel). It was apparent from the face of the Log that all of the Halpern Contested Documents "pertain to activities that occurred during and in connection with [Careaga's] representation of the *Reid* plaintiffs (and prospective plaintiffs) in anticipation of litigation, and all of them were prepared by or for Careaga, Halpern, or Schlichter Bogard." Doc. 57 at 8. For example, the Log describes "[a]ttorney [c]orrespondence" dated March 14, 2008, from Careaga concerning "[c]onfidential travel expenses for Peru trips in Nov. 2007, Dec. 2007 and Jan. 2008 related to clients and lawsuit" (Doc. 57-1 at 1, File 4); "[a]ttorney email correspondence from Schlichter Bogard attorney Beth Wilkins to Jay

18

Halpern and Victor Careaga … regarding confidential client information" (*id.* at 3, File 22); and "draft pleadings prepared by attorney" (*id.*, File 27). The Log expressly identified these and the other documents as "Attorney Work Product" pertaining to "litigation against Doe Run and Renco." *See generally id.*

The district court also had before it the affidavit of Jay Halpern, Halpern's principal attorney, who has been "continuously involved in the *Reid* cases since their inception and was part of the team, along with Victor Careaga and the law firm of Schlichter Bogard LLP, that first investigated and developed the plaintiffs' claims for court, beginning in approximately 2006." Doc. 66-1 at 1 (¶ 3). Mr. Halpern helped create the Careaga Privilege Log and personally reviewed the documents contained in each of the 30 files listed thereon, confirming that they "contain attorney work product and the substance of privileged attorney-client communications pertaining to hundreds of current plaintiffs in the *Reid* cases[.]" *Id.* at 1-2 (¶¶ 4, 8-9). Thus, the privilege was supported by a licensed attorney with personal knowledge attesting under penalty of perjury that the Halpern Contested Documents contained attorney work product. Again, no competing evidence was ever adduced.

## B. The district court's reasons for denying Halpern's motion were insufficient and clearly erroneous.

Despite the evidence described above, the district court found that Halpern had failed to establish an adequate factual basis to uphold its assertion of work-

19

product protection over the items listed on the Careaga Privilege Log. Doc. 78 at 15-16; Doc. 106 at 12. The court cited three reasons for reaching that conclusion. First, it found the Log defective, because some of the files listed were "bundles of individual and potentially unrelated items" and several entries were "undated or incorrectly dated." Doc. 106 at 12. Second, it found that the documents described on the Log bore "no apparent relation" to the "client recruitment trips" described in Careaga's affidavit. Doc. 78 at 16. Third, it found that "Careaga's travel was for a business development purpose (*i.e.*, client acquisition)" rather than in anticipation of litigation. *Id.* at 17. These were erroneous, invalid reasons to deny work-product protection to the Halpern Contested Documents.

### 1. *Perceived deficiencies with the Log were not a valid basis to deny work-product protection.*

It was an abuse of discretion for the district court to deny Halpern's request for a protective order simply because it found certain entries on the Careaga Privilege Log defective. This is not a case where the objecting party did not provide a privilege log or even "attempt[] to parse out the communications that would be privileged[.]" *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015). Nor is this a case where the privilege log was "categorical." *Cf. United States v. Moore, Ingram, Johnson & Steele, LLP*, No. 21-10341, 2022 U.S. App. LEXIS 21728, at *9 (11th Cir. Aug. 5, 2022).

20

Strict adherence to a set of rigid requirements was unwarranted considering that the files belonged to an opposing attorney. "[W]hen a discovery request demands production of an attorney's records in connection with representation of a client, invocation of the protections of the attorney-client privilege and work-product doctrine may be effective without requiring a detailed privilege log." *Hulley Enters. v. Baker Botts LLP (In re application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding)*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017). *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1190 (11th Cir. 2013) (finding that documents related to expert testimony sought in a § 1782 action "were prepared in anticipation of litigation or for trial" because the documents were prepared "as part of their work for [the intervenor]"); *United Kingdom*, 238 F.3d at 1322 (presuming that materials generated by the United States during a criminal investigation were work product).

The district court also should have considered each document separately. This Court has held that "a district court faced with privilege objections should consider the material 'on a document-by-document basis to determine whether each is privileged." *Drummond Co. v. Collingsworth*, 816 F.3d 1319, 1327-28 (11th Cir. 2016) ((quoting *In re Grand Jury Subpoena*, 831 F.2d 225, 226 (11th Cir. 1987))). That did not happen here. Even if the bundled documents were problematic, there were still many entries to which that criticism did not apply.

*See* Doc. 78 at 10 (noting that "some items appear to be single documents"). Half of the logged entries consisted of 10 or fewer pages. *See* Doc. 57-1. Similarly, while seven of the entries on the Log were undated (including File 22, which had an obvious typo), precise dates or ranges of dates were provided for the other 23 documents. *See id*. The district court did not explain why the absence of dates for some entries should eviscerate the privilege for the dated entries.

More puzzling still is why the court found the absence of dates "frustrating" to its ability to understand the context in which the documents were created. Doc. 106 at 12; Doc. 78 at 16. Careaga's affidavit established that, beginning in early 2006 and continuing "through the remainder of the year," he and Mr. Halpern investigated "the potential claims of residents of La Oroya, Peru and surrounding areas" against Petitioners "for exposure to toxic lead and other toxic metals" caused by their smelter. Doc. 54-1 at 2 (¶ 7). As part of that process, "and in anticipation of litigation that would be instituted in the future," he "began to develop the strategy and framework" to identify and communicate with "prospective Peruvian clients to properly bring and litigate their claims in the United States." *Id.* at 3 (¶ 9). "After doing this," Careaga traveled to La Oroya as a licensed attorney to sign up clients "to become plaintiffs in Missouri litigation." *Id.* (¶¶ 9-10). He further attested that "[b]y late 2006, hundreds of clients" had retained him and Halpern to represent them, and "[b]y the end of 2006,"

22

Schlichter Bogard had come on board and the lawyers had "agreed to institute legal action in Missouri." *Id.* (¶ 10). Suit was filed "soon thereafter." *Id.*

Halpern proffered that "[t]he first lawsuits were filed in Missouri on August 7, 2008" and "[a]dditional suits continued to be filed in the *Reid* litigation up through 2018." Doc. 57 at 10. The Eastern District of Missouri has more correctly observed, however, that "the litigation began in 2007," with the first case filed "in October 2007." *A.O.A.*, 2023 U.S. Dist. LEXIS 10058, at *5-6. Nevertheless, the chronology before the district court should have been sufficient to show that, for all documents on the Careaga Privilege Log dated before August 7, 2008, "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628, 631 (S.D. Fla. 2020) (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).

The application of the work-product doctrine should have been even clearer for the documents created after the litigation began. *See* Doc. 54-1 at 3 (¶ 11) (Careaga attesting that he served as co-counsel with Halpern and Schlichter Bogard "on an uninterrupted basis from 2006 until April, 2013"). After a case has been filed, "it can be assumed that all documents … withheld on the grounds of privilege were created 'because of' that pending litigation." *United States v. Bouchard Transp.*, No. 08-4490, 2010 U.S. Dist. LEXIS 37438, at *4 (E.D.N.Y.

23

Apr. 14, 2010). Indeed, under the district court's own rules, it was arguably unnecessary to log any documents generated after the first cases were filed. *See* S.D. Fla. L.R. 26.1(e)(2)(C) (exempting from the privilege log "work product material created after commencement of the action").

### 2. The court clearly erred in finding that the documents were created for a business purpose.

It was clear error for the district court to find that no evidence or explanation had been advanced connecting records of Careaga's travel to Peru to anticipated litigation, as opposed to "business development." Doc. 78 at 17. Nothing in Careaga's affidavit or elsewhere indicated that he went to Peru simply to drum up business. Rather, he attested that he went to Peru with the express purpose of signing up clients "to become plaintiffs in Missouri litigation." Doc. 54-1 at 3 (¶ 9). Halpern similarly advised the court that "[a]ll of the documents on the Careaga Privilege Log pertain to the activities of plaintiffs' counsel and their course of preparation for litigation against Petitioners – litigation that remains ongoing in the Eastern District of Missouri." Doc. 66 at 3. Likewise, the Log itself links the Halpern Contested Documents to Careaga's plaintiff recruitment efforts. *See, e.g.*, Doc. 57-1 at 1, File 4 (describing "[c]onfidential travel expenses for Peru trips in Nov. 2007, Dec. 2007 and Jan. 2008 *related to clients and lawsuit*") (emphasis added); *id.* at 3, File 26 (describing "[a]ttorney correspondence between

24

Schlichter Bogard and Jay Halpern/Victor Careaga regarding *investigation of claims against Defendants* and confidential client information") (emphasis added).

The district court improperly conflated "client recruitment" with "business development." Doc. 78 at 17; Doc. 106 at 12 n.4. The process of advising injured persons of their rights and recruiting them to serve as plaintiffs in lawsuits such as this one is a necessary prerequisite to initiating the litigation. *Cf. Dowdell v. Apopka*, 698 F.2d 1181, 1188 (11th Cir. 1983) (upholding award of attorneys' fees for pre-filing meetings with community residents). When that work is reflected in documents created by or at the direction of an attorney, those documents merit work-product protection. *Cf. In re Bertucci Contracting Co., LLC*, No. 12-664, 2014 U.S. Dist. LEXIS 72986, at *44 (E.D. La. May 27, 2014) (finding meetings with prospective clients protected by attorney work-product privilege); *EEOC v. CRST Van Expedited, Inc.*, No. 07-0095, 2009 U.S. Dist. LEXIS 3621, at *12-14 (N.D. Iowa Jan. 20, 2009) (holding that "information learned during interviews with prospective class members" and solicitation letters sent to prospective class members constituted work product, though the letters were otherwise discoverable under Rule 26); *see also United States EEOC v. Pioneer Hotel, Inc.*, No. 11-1588, 2014 U.S. Dist. LEXIS 142735, at *13 (D. Nev. Oct. 6, 2014) (same).

The Northern District of Illinois addressed a similar situation in *Gross v. Agri Stats, Inc.*, No. 19-8318, 2022 U.S. Dist. LEXIS 46510 (N.D. Ill. Mar. 16,

2022). There, a plaintiffs' firm asserted work-product protection over materials gathered by its hired investigators during its pre-filing investigation of a putative class action lawsuit. Because the work was performed before the firm had engaged a client, the defendants argued that it was simply "business development" activity that could not be shielded from disclosure under the work-product doctrine. *Id.* at *8. After careful consideration, the district court disagreed, reasoning that if work-product protection did not apply to such materials, "the ability of putative class counsel in complex class actions to investigate, build and file class cases would be seriously hampered." *Id.* at *46. "A result faithful to *Hickman*," the court concluded, required the work-product claim to be upheld "under any common-sense application of Rule 26(b)(3)[.]" *Id.* at *47.

Even when Careaga was not actively traveling to Peru, the work he and his co-counsel undertook to investigate potential claims against Petitioners was in anticipation of litigation and thus should have been protected from disclosure under Rule 26. *See, e.g.*, Doc. 57-1 at 3, File 26. "[T]he literal language of the Rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983). Thus, an attorney's notes prepared during a pre-suit investigation are protected work-product. *E.g.*, *Frank LLP v. Consumer Fin. Prot. Bureau*, 288 F. Supp. 3d 46, 55 (D.D.C. 2017). This includes notes of interviews

26

with prospective clients. *E.g.*, *Cleary v. Kaleida Health*, No. 22-26, 2024 U.S. Dist. LEXIS 216311, at *33 (W.D.N.Y. Nov. 27, 2024); *Est. of M.R. v. Or. Dep't of Hum. Servs.*, No. 23-705, 2024 U.S. Dist. LEXIS 64536, at *17-18 (D. Or. Apr. 9, 2024); *EEOC v. Frontier Hot-Dip Galvanizing, Inc.*, No. 16-691, 2023 U.S. Dist. LEXIS 135971, at *10 (W.D.N.Y. Aug. 4, 2023).

Nor should it have mattered that some of the records in Careaga's travel reports were "generated by unidentified third-party vendors." Doc. 78 at 17. The work product of an attorney includes "the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product." *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). The goal is to safeguard "the privacy of [an attorney's] professional activities," *Hickman*, 329 U.S. at 513, and "allow attorneys to make careful and thoughtful preparation for litigation, without fear that their adversaries will unfairly benefit from their efforts." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). Thus, "[w]ork product protection prevents most inquiries into an attorney's work files and mental impressions." *Drummond Co.*, 885 F.3d at 1335. Work-product protection over such files can include documents generated by third parties. *See, e.g.*, *Mitre Sports Int'l v. HBO*, No. 08-9117, 2010 U.S. Dist. LEXIS 162104, at *25 (S.D.N.Y. Oct. 14, 2010) (holding that third-party e-mails responding to party's investigators qualified for work-product protection); *see also generally*

27

*Diamond Resorts U.S. Collection Dev., Ltd. Liab. Co. v. US Consumer Attys, P.A.*, 519 F. Supp. 3d 1184, 1201 (S.D. Fla. 2021) ("[D]isclosure to a third party does not necessarily destroy the privilege.").

By dismissing Careaga's efforts to initiate the litigation against Petitioners as mere "business development," the district court failed to recognize and effect the purpose of the work-product doctrine. Indeed, "the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Hickman*, 329 U.S. at 512. Thus, it was also an abuse of discretion for the district court to order the production of the Halpern Contested Documents without even considering whether Petitioners could establish the requisite level of need or a prima facie case for applying the crime-fraud exception. *See* Doc. 106 at 19-20; Fed. R. Civ. P. 26(b)(3)(A); *Drummond Co.*, 885 F.3d at 1335 (describing the two-part test for the crime-fraud exception to apply).

### 3. *The district court erred by failing to consider the scope of the Subpoena and the broader context of the action.*

The district court's error was compounded by the fact that, as the magistrate judge had previously observed, the Subpoena clearly sought attorney work product, including "documents and information provided to Careaga as part of his

28

work as an attorney and as co-counsel to Halpern in the consolidated toxic tort actions in the Eastern District of Missouri." Doc. 59 at 8. In granting Halpern's motion to intervene, the magistrate judge observed that the Subpoena "on its face commands production of documents that may be protected from disclosure under the work-product doctrine." *Id.* at 10. Halpern was also granted permission to assert attorney-client privilege over one document "already identified as putatively privileged in its log," *id.* at 12-13, because it "contains correspondence between the attorney and a client." *Id.* at 11 (citing Doc. 57-1 at 3, File 27). These contextual facts appear to have been forgotten when the court denied Halpern's motion for a protective order.

The court should have recognized that this entire § 1782 action concerns Careaga's trips to Peru to enroll plaintiffs in the Missouri Lawsuits. *See* Doc. 1 at 2-3. Petitioners' discovery application concerns "the recruiting of plaintiffs *to bring lawsuits against [Petitioners]*" and "the illegal creation and falsification of documents … *to support the litigation claims*" in the Missouri Lawsuits. *Id.* at 9 (emphasis added). Nearly every category of documents sought by the Subpoena pertains to either "the recruitment of plaintiffs in Peru," "the Missouri lawsuits," or "the recruitment of plaintiffs for the Missouri lawsuits." Doc. 51-1 at 12-15. Thus, it should have been clear to the court that the Halpern Contested Documents all relate in some way to Careaga's efforts to bring a lawsuit against Petitioners;

29

otherwise, they would be non-responsive. Considering this context, and without any contrary evidence, there was simply no basis for the court to dispute Halpern's "competent evidence that the materials in question were created in anticipation of litigation." *Holladay v. Royal Caribbean Cruises, LTD*, 333 F.R.D. 588, 592 (S.D. Fla. 2019).

The court also should have taken more care to review Halpern's privilege claims because the Petitioners are the opposing parties in the *Reid* cases. Halpern emphasized this point repeatedly in its briefing. *See* Doc. 57 at 7; Doc. 66 at 1-3; Doc. 81 at 10. When Halpern was allowed to intervene, the magistrate judge acknowledged that this case "involves defense counsel seeking discovery into current opposing counsel's efforts to recruit foreign plaintiffs in consolidated actions currently pending in another district." Doc. 59 at 8. These "unusual circumstances" illustrated "the potential magnitude of prejudice Halpern and its clients could experience if privileged matters are disclosed" (*id.*) and warranted a more circumspect approach in the district court's orders. *Cf.* Doc. 78 at 14 (noting that application of the work-product doctrine is "a highly fact-specific inquiry that depends on the circumstances of a given case").

The magistrate judge failed to address Halpern's concerns entirely; the district judge dismissively called them a "recent reformulation of a tired and unsuccessful argument." Doc. 106 at 19. But the purpose of the work-product rule

30

is to protect certain evidence "from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." *Diamond Resorts*, 519 F. Supp. 3d at 1201 (quoting Wright & Miller, Fed. Prac. & Proc. Civ. § 2024 (3d ed. 2019)). Halpern has not found (and Petitioners did not cite) any case that has allowed such sweeping discovery into the internal files of a party's litigation adversaries during the pendency of the litigation, let alone one that declined to recognize *any* privileges associated with the attorney's files.

If nothing else, the court should have limited Petitioners' ability to use the Halpern Contested Documents for their own purposes in any other proceeding, especially the *Reid* cases. *See* Doc. 81 at 10. A party "concerned in a particular case that a § 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure … should bring evidence of such chicanery to the § 1782 court's attention." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015) (suggesting in such circumstances that a protective order might be appropriate, citing Fed. R. Civ. P. 26(c)(1)). Such an order was necessary here to prevent an abuse of process. "Materials sought pursuant to [§] 1782(a) must be discovered 'for use in a foreign or international tribunal.'" *In re Letter of Request for Judicial Assistance etc.*, 669 F. Supp. 403, 405 (S.D. Fla. 1987).

31

II.     **The district court abused its discretion by failing to consider Halpern's privilege claims on a document-by-document basis.**

It was an abuse of discretion for the district court to deny Halpern's motion without conducting an individualized determination for each document on the Careaga Privilege Log. Privilege determinations must be made on a document-by-document basis. *Drummond Co.*, 816 F.3d at 1327-28; *In re Grand Jury Subpoena*, 831 F.2d at 226. Courts reviewing privilege logs and challenges "must review each requested document and make an individualized assessment of privilege." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 200 (2011) (Sotomayor, J., dissenting); *United States v. McQuillan*, No. 93-134, 1994 U.S. Dist. LEXIS 11487, at *4 (M.D. Fla. Aug. 5, 1994) ("The proper method of determining whether certain items are privileged is a document by document examination by the Court…."). Even when a court orders discovery of attorney work product, it must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of the party's attorney … concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The district court here made no such effort.

The court improperly applied an "all or nothing" approach to Halpern's assertions of privilege, entering a blanket order denying all relief sought by Halpern and ordering the production of all responsive documents. *See* Doc. 78 at 21; Doc. 106 at 17-18. As Halpern's motion explained, the documents described on the Careaga Privilege Log generally fit into certain categories of protected

32

documents – for instance, "internal correspondence among co-counsel for the *Reid* plaintiffs that reflects the substance of privileged and confidential attorney-client communications" (Doc. 57 at 8) and "[a]ttorney correspondence and attachments … regarding investigation of claims against Defendants and confidential client information" (Doc. 57-1 at 3). *See* Doc. 66 at 4-5 (describing drafts, handwritten notes, and communications among co-counsel about the litigation as categories of documents entitled to protection). It was an abuse of discretion for the district court to order all such materials to be produced without even considering them on a category-by-category basis, let alone conducting an individualized analysis. *Cf. Klosin v. E.I. du Pont de Nemours & Co.*, 561 F. Supp. 3d 343, 360 (W.D.N.Y. 2021) ("a court must parse the contents of each document" and permit redactions where necessary to protect core work product).

## III. The district court abused its discretion by not conducting a hearing or examining the documents *in camera*.

This Court has held that a district court must determine the validity of each privilege assertion "by either conducting a hearing or inspecting the documents *in camera*." *In re Grand Jury Subpoena*, 831 F.2d at 228. Neither happened here. The practice of determining privilege claims through *in camera* review is "well established in the federal courts." *United States v. Zolin*, 491 U.S. 554, 569 (1989); *see e.g.*, *Republic of Ecuador*, 741 F.3d at 1188; *Miccosukee Tribe*, 516 F.3d at 1239; *United Kingdom*, 238 F.3d at 1315; *Bridgewater*, 286 F.R.D. at 641;

33

*Holladay*, 334 F.R.D. at 630; *IQRIS Techs. LLC v. Point Blank Enters.*, No. 21-61976, 2023 U.S. Dist. LEXIS 2282, at *5 (S.D. Fla. Jan. 5, 2023).

The district judge concluded that *in camera* review was unwarranted because Halpern had failed to provide any evidence to support its assertions of work-product privilege. *See* Doc. 106 at 17 (remarking that before a party can ask for an *in camera* review, it "must present some evidence to convince the court that the privilege might apply" (quoting *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584-85 (S.D. Fla. 2013))); *id.* (finding that "the Intervenors *declined* to adequately substantiate their claims") (emphasis added). As explained above, that finding was clearly erroneous; the evidence was sufficient to establish by a preponderance of the evidence that at least *some* of the Halpern Contested Documents were privileged work product, notwithstanding any perceived defects with the Log.

In the context of this case, the court should have taken some additional step to assure itself that all applicable privileges were properly observed, either by conducting a hearing or by examining the documents *in camera*. This was particularly true for the two-page letter within File 27, which was described in the Log as "attorney correspondence with client" and which Halpern asserted to be "a confidential communication from attorneys to their clients for the purpose of providing legal advice and assistance." Doc. 81 at 9. The district court found the

Log entry deficient (*see* Doc. 106 at 14) but did not give Halpern an opportunity to address those deficiencies before ordering the document to be turned over. The court should have at least reviewed the letter *in camera* first. *Cf. Drummond Co.*, 885 F.3d at 1339 n.14 (ordering *in camera* review on remand to determine privilege and application of crime-fraud exception); *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1236 (S.D. Fla. 2018) (finding *in camera* inspection necessary "to safeguard one of the legal profession's oldest protections").

If the court felt more explanation was needed before an *in camera* review was warranted (*see* Doc. 106 at 18), it should have ordered Halpern and Careaga to revise the Log. *Cf. In re Grand Jury Subpoena*, 831 F.2d at 228; *Julie A. Su v. Arise Virtual Sols., Inc.*, No. 23-61246, 2024 U.S. Dist. LEXIS 106957, at *9 (S.D. Fla. June 17, 2024). Instead, by simply denying Halpern's motion for a protective order, the court erroneously authorized Petitioners to conduct a general "fishing expedition" into their opponents' files without any protective measures for work-product and attorney-client communications. This was an abuse of discretion. *See United States v. Nobles*, 422 U.S. 225, 240 (1975) (suggesting that allowing a "general 'fishing expedition' into the defense files" would have been an improper exercise of discretion). "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Cox*, 17 F.3d at 1421-22 (quoting *Hickman*, 329 U.S. at 510).

35

**CONCLUSION**

Because the evidence in the record below was sufficient under the circumstances to establish that at least some of the Halpern Contested Documents were privileged, the judgment of the district court denying Halpern's motion for protective order should be reversed and the matter remanded to the district court for further proceedings.

Halpern should be given an opportunity to submit an amended privilege log, after which the district court should be directed to hold an evidentiary hearing and/or an *in camera* review before ordering Careaga to produce any of the Halpern Contested Documents to Petitioners. This Court should also instruct the district court on remand that documents created by or for an attorney in anticipation of litigation constitute attorney work product, even when they pertain to an attorney's efforts to identify and engage prospective plaintiffs.

January 2, 2025                        Respectfully submitted,

                                       */s/ Nathan D. Stump*
                                       Nathan D. Stump
                                       Schlichter Bogard, LLP
                                       100 South 4th Street, Suite 1200
                                       St. Louis, MO 63102
                                       (314) 621-6115
                                       nstump@uselaws.com
                                       *Attorneys for Intervenor-Appellant*
                                       *Halpern Santos & Pinkert, P.A.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the Initial Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) as it was prepared using a computer and contains 10,410 words in a proportionally spaced typeface (Times New Roman, 14 point), double-spaced with one-inch margins on all four sides.

I further certify that this brief has been scanned for viruses and is virus-free.

*/s/ Nathan D. Stump*
Nathan D. Stump

37

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2025, I electronically filed the Initial

Brief of Intervenor-Appellant Halpern Santos & Pinkert, P.A. with the Clerk of the

Court for the United States Court of Appeals for the Eleventh Circuit by using the

CM/ECF system.

I certify that all participants in the case are registered CM/ECF users,

except Victor Careaga, and that service will be accomplished by the CM/ECF

system.

I certify service on Victor Careaga was accomplished by mailing a complete

copy via e-mail at victoracareaga23@gmail.com and via the United States Postal

Service to this address:

> Victor Careaga
> 10509 NW 66th Street
> Doral, FL 33178

> /s/ Nathan D. Stump
> Nathan D. Stump