Appeal No. 24-13266-JJ

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## IN RE: THE RENCO GROUP AND THE DOE RUN RESOURCES CORPORATION

---

THE RENCO GROUP, INC. AND DOE RUN RESOURCES CORPORATION,
*Petitioners-Appellees*,

v.

HALPERN SANTOS & PINKERT, P.A.
*Intervenors-Appellants*

RODRIGUEZ TRAMONT & NUNEZ, P.A. AND NAPOLI SHKOLNIK PLLC,
*Intervenors-Appellants*

Appeal from the United States District Court
for the Southern District of Florida
No. 1:22-cv-21115-JAL
Honorable Joan A. Lenard, United States District Judge

---

## REPLY BRIEF OF INTERVENOR-APPELLANT
## HALPERN SANTOS & PINKERT, P.A.

Nathan D. Stump
Schlichter Bogard, LLC
100 South 4th Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
nstump@uselaws.com
*Attorney for Intervenor-Appellant*
*Halpern Santos & Pinkert, P.A.*

Appeal No. 24-13266-JJ

_____

THE RENCO GROUP, INC., et al.
*Petitioner-Appellees,*

v.

HALPERN SANTOS & PINKERT, P.A.
*Intervenor-Appellant*

RODRIGUEZ TRAMONT & NUNEZ, P.A. AND NAPOLI SHKOLNIK PLLC,
*Intervenors-Appellants*

_____

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Intervenor-Appellant Halpern Santos & Pinkert P.A. ("Halpern") submits the

following Certificate of Interested Persons and Corporate Disclosure Statement

pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1-1.

**1. Interested Persons**

The name of each person, attorney, association of persons, firm, law firm,

partnership, and corporation that has or may have an interest in the outcome of this

action including subsidiaries, conglomerates, affiliates, parent corporations, public-

traded companies that own 10% or more of a party's stock and any other

identifiable entities related to any party in this case are as follows:

Ayala Law

Bayman, Andrew

Berra, Jr., Thomas

Breakstone, Jay L.T.

Careaga, Victor

D.R. Acquisition Corp.

Damian Valori LLP

Devine Goodman Rasco & Watts-FitzGerald LLP

Dinan, Jay Patrick

Doe Run Cayman Holdings LLC

Doe Run Resources Corporation

Dowd Bennett, LLP

Dowd, Edward, Jr.

Drake, Geoffrey

Dubanevich, William J.

Fernandez, Amanda Lara

Garcia-Menocal & Irias

Garcia-Menocal, Jorge Alejandro

Halpern Santos & Pinkert, P.A.

Halpern, Jay

Hickey, Michael

Honorable Catherine D. Perry

Honorable Joan A. Lenard

Honorable Lauren Fleischer Louis

Honorable Rodney W. Sippel

Icenogle, Denisse

Kaiser, Marvin

King & Spalding, LLP

Kraft, Kristine

Law Offices of William J. Dubanevich

Lewis Rice, LLC

Maura, Eduardo Ayala

Mecias, Angelica

Mestre, Jorge Alejandro

Napoli Shkolnik PLLC

Neal, Albert Bruce

Nunez, Jr., Paulino Antonio

Parker Waichman

Renco Group Inc.

Renfroe, Tracie

Rennert, Ira

Rivero Mestre, LLP

Rodriguez Tramont & Nunez, P.A.

Rodriguez, Francisco Ramon

Schlichter Bogard, LLC

Schlichter, Jerry

Stump, Nathan

Thaler, Louis

Toledo, Carmen

Werner, Michael

Zelms, Jeffrey

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement .................C1

Table of Citations ..................................................................................................... ii

Introduction ............................................................................................................... 1

Argument ................................................................................................................... 2

    I.   The district court did not hold a hearing to address Halpern's motion for a protective order. .................................................................. 2

    II.  The evidence was sufficient to establish the work-product privilege. ...... 4

        A.    The Subpoena clearly sought attorney work product...................... 4

        B.    The Careaga Privilege Log and affidavits of counsel supplied the necessary factual basis to support work-product protection. .... 6

        C.    Documents reflecting Careaga's efforts to recruit plaintiffs for the litigation should have been protected as work product............. 9

        D.    Receipts and expense reports also merited work-product protection. ...................................................................................... 12

    III. The district court abused its discretion by not considering each document or class of documents separately........................................... 14

    IV. The district court should have examined the documents *in camera*. ...... 17

Conclusion............................................................................................................... 19

Certificate Of Compliance ..................................................................................... 20

Certificate Of Service............................................................................................. 21

i

# TABLE OF CITATIONS

## Cases

*3M Combat Arms Earplug Prods. Liab. Litig.*,
    No. 19-2885, 2021 U.S. Dist. LEXIS 46591 (N.D. Fla. Mar. 12, 2021) ....... 9, 11

*Am. Nat'l Bank & Tr. Co. v. Equitable Life Assurance Soc'y of the U.S.*,
    406 F.3d 867 (7th Cir. 2005) ................................................................. 18

*Bartram, Ltd. Liab. Co. v. Landmark Am. Ins. Co.*,
    No. 10-00028, 2011 U.S. Dist. LEXIS 10100 (N.D. Fla. Jan. 24, 2011) ........... 6

*Bridgewater v. Carnival Corp.*,
    286 F.R.D. 636 (S.D. Fla. 2011) ............................................................ 6

*Campero USA Corp. v. ADS Foodservice, LLC*,
    916 F. Supp. 2d 1284 (S.D. Fla. 2012) ................................................. 4, 7

*Chase v. Nova Se. Univ., Inc.*,
    No. 11-61290, 2012 U.S. Dist. LEXIS 83815 (S.D. Fla. June 18, 2012) .......... 11

*Chemoil Corp. v. MSA V*,
    No. 12-472, 2013 U.S. Dist. LEXIS 33888 (M.D. Fla. Mar. 12, 2013) ........... 13

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
    No. 06-2233, 2008 U.S. Dist. LEXIS 8789 (E.D.N.Y. Feb. 6, 2008) ............... 12

*Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*,
    No. 06-21267, 2007 U.S. Dist. LEXIS 49994 (S.D. Fla. July 11, 2007) .... 11, 18

*Drummond Co. v. Collingsworth*,
    816 F.3d 1319 (11th Cir. 2016) ............................................................ 14

*Drummond Co. v. Conrad & Scherer, LLP*,
    885 F.3d 1324 (11th Cir. 2018) ................................................. 4, 10, 14

*Foster v. Hill (In re Foster)*,
    188 F.3d 1259 (10th Cir. 1999) ............................................................ 17

*Hall v. Balt. Police Dep't*,
    No. 24-1137, 2025 U.S. Dist. LEXIS 26704 (D. Md. Feb. 13, 2025) ............... 16

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ................................................................. 13, 14

*In re BankAmerica Corp. Secs. Litig.*,
    270 F.3d 639 (8th Cir. 2001) ............................................................ 17

*In re Grand Jury Investigation,*
   769 F.2d 1485 (11th Cir. 1985) .......................................................... 13

*In re Grand Jury Proceedings,*
   220 F.3d 568 (7th Cir. 2000) ................................................................ 6

*In re Grand Jury Subpoena,*
   831 F.2d 225 (11th Cir. 1987) ............................................... 14, 15, 17

*In re Professionals Direct Ins. Co.,*
   578 F.3d 432 (6th Cir. 2009) .............................................................. 10

*Johnson v. Gross,*
   611 F. App'x 544 (11th Cir. 2015) ....................................................... 4

*Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.,*
   426 U.S. 394 (1976) ........................................................................... 18

*Maplewood Partners, L.P. v. Indian Harbor Ins. Co.,*
   295 F.R.D. 550 (S.D. Fla. 2013) ........................................................ 18

*Mayfair House Ass'n v. QBE Ins. Corp.,*
   No. 09-80359, 2010 U.S. Dist. LEXIS 151401 (S.D. Fla. Jan. 5, 2010)........... 19

*Mitsui Sumitomo Ins. Co. v. Carbel, LLC,*
   No. 09-21208, 2011 U.S. Dist. LEXIS 74148 (S.D. Fla. July 11, 2011)............. 7

*Nat'l Union Fire Ins. Co. v. Fla. Crystals Corp.,*
   No. 14-81134, 2016 U.S. Dist. LEXIS 195345 (S.D. Fla. Apr. 12, 2016) ........ 19

*Ohralik v. Ohio State Bar Assn.,*
   436 U.S. 447 (1978) ........................................................................... 10

*Siegmund v. Bian,*
   No. 16-62506, 2018 U.S. Dist. LEXIS 130337 (S.D. Fla. Aug. 1, 2018) .......... 7

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.,*
   525 F.3d 1107 (11th Cir. 2008) .......................................................... 10

*United States v. Korf,*
   11 F.4th 1235 (11th Cir. 2021)............................................................ 19

*United States v. El Paso Co.,*
   682 F.2d 530 (5th Cir. 1982))............................................................. 15

*York Grp., Inc. v. Pontone,*
   No. 10-1078, 2012 U.S. Dist. LEXIS 193838 (W.D. Pa. Aug. 6, 2012) ........... 13

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) .......................................................................... 6

Fed. R. Civ. P. 26(b)(5) ............................................................................... 7

## INTRODUCTION

This Court should reverse the decision of the district court and remand. Petitioners' "omnibus" response mischaracterizes the facts and history below, confuses Halpern with the other appellants, misrepresents the holdings of several cases, advances errant legal arguments in its statement of facts, and fails to distinguish the applicable legal authority. Mostly, however, it just repeats the same argument over and over, that Halpern "failed to substantiate" its assertions of privilege and so must lose. *See, e.g.*, Dkt. 51 at 16, 18, 20, 24, 36. It would be easy for this Court to cite the abuse of discretion standard and turn away this appeal with the same simple refrain. But this is not an ordinary case, and context matters.

Petitioners are seeking discovery from Victor Careaga, a former attorney who previously represented plaintiffs in lawsuits now pending against them in Missouri. The Subpoena they served on Careaga seeks a broad swath of records related to his "activity in Peru relating to the Missouri lawsuits" and "the recruitment of plaintiffs for the Missouri lawsuits." *See* Doc. 51-1 at 13-14. These records are classic attorney work product and should not have been discovered absent a showing of substantial need or the crime-fraud exception. But the court ordered the records to be produced without any such findings because it found that Halpern had failed to establish a plausible claim of privilege. This was clearly erroneous and an abuse of discretion.

1

Halpern respectfully asks this Court to carefully consider the circumstances of this case. The evidence in the district court included affidavits from counsel, the Careaga Privilege Log, and the Subpoena itself – all of which showed that the Halpern Contested Documents were privileged work product. No contradictory evidence was presented. That should have been enough to warrant at least an *in camera* inspection or an evidentiary hearing. Instead, aside from its paper submissions, Halpern was not afforded an opportunity to be heard and present evidence, either before the magistrate judge or the district court, and its request for an *in camera* inspection was denied. If the privileges are to mean something, the judgment of the district court must be reversed.

## ARGUMENT

### I.    The district court did not hold a hearing to address Halpern's motion for a protective order.

Petitioners' response muddies the waters surrounding the procedural history of this case by distorting the timeline of events and suggesting that Halpern and the other appellants acted in unison. They argue (in their statement of facts) that "[a]fter months of resistance, appellants eventually submitted three privilege logs" that were "so deficient that they required a discovery hearing." Dkt. 51 at 13. In fact, Halpern was responsible for just one privilege log – the Careaga Privilege Log – which was produced to Petitioners on July 14, 2023. *See* Doc. 38 at 41-42.

The Careaga Privilege Log was filed in conjunction with Halpern's motion for a protective order on August 4, 2023. *See* Doc. 57-1. That was five days *before* Halpern was permitted to intervene in the proceeding (*see* Doc. 59) and five days *after* the July 31, 2023 discovery hearing. An attorney for Halpern was present at the July 31 hearing but was not a full participant, as Halpern's motion to intervene was still pending. *See* Doc. 64 at 3, 25, 30-31, 52. The magistrate judge did not attempt to resolve any of the privilege claims at that hearing and did not receive any evidence. *See id.* at 13-14, 17-18. Earlier proceedings and orders of the district court, including the June 15, 2023 hearing and related order referenced by Petitioners (Dkt. 51 at 24 n.3), pre-date Halpern's involvement in this litigation.

It is important for the Court to understand that timeline. Petitioners assert that Halpern and the other appellants had "multiple opportunities to substantiate their claims" (Dkt. 51 at 18), but Halpern was afforded just one shot to make its case – the motion for protective order (Doc. 57) – which the court required Halpern to draft and file on just five days' notice, before Halpern was even formally a party to this litigation. *See* Doc. 56. Petitioners assert that Halpern had "the benefit of oral argument" (Dkt. 51 at 21), but that is not true. There was no hearing on the motion for protective order and an evidentiary hearing on the privilege claims was never held. Nor was Halpern given an opportunity to submit a revised privilege log to address the court's concerns. When Petitioners argue that

3

Halpern had "ample opportunity to substantiate [its] work product claims" (Dkt. 51 at 24) and simply "chose not to" (*id.* at 15), they are obfuscating that record.

Similarly, Petitioners' disparagement that Halpern "fail[ed] to even attempt to meet [its] evidentiary burden" (*id.* at 35) is divorced from the facts. There are cases where the privilege holder has stubbornly relied solely on a deficient privilege log, *e.g.*, *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1289 (S.D. Fla. 2012), or simply refused to produce a privilege log altogether, *e.g.*, *Johnson v. Gross*, 611 F. App'x 544, 548 (11th Cir. 2015). This is not such a case. Halpern produced affidavits from counsel and a privilege log and still was denied all measure of protection over any of the challenged documents.

## II.     The evidence was sufficient to establish the work-product privilege.

Even with the limitations described above, Halpern provided sufficient evidence to establish that the documents on the Careaga Privilege Log were all "obtained or prepared by counsel … with an eye toward litigation." *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018).

### A.     The Subpoena clearly sought attorney work product.

Petitioners contend that the Log "consisted of documents unrelated to the anticipation of litigation" (Dkt. 51 at 21), but they have never seen the logged documents and have no basis for that assertion. Their claim also rings hollow considering the scope of their Subpoena. It is undisputed that the Log was

4

generated based on documents Careaga identified as responsive to the Subpoena. *See* Doc. 64 at 30-31. The Subpoena, in turn, exclusively sought records pertaining to "the ongoing lawsuits pending in the Eastern District of Missouri against [Petitioners] and others in relation to alleged injuries in La Oroya, Peru[.]" Doc. 51-1 at 7 (identifying specific case numbers).

Each category of documents listed in the Subpoena related in some way to "the Missouri Lawsuits." *See id.* at 12-15. For example, Petitioners sought documents relating to the "methods, tactics or strategies used … in the recruitment of plaintiffs in Peru" (*id.* at 12); communications concerning "any forged or falsified document for use in the Missouri lawsuits" (*id.* at 13); records of any payment Careaga received "in connection with any activity in Peru relating to the Missouri lawsuits" (*id.*); and "records of travel" for Careaga or any other attorney "in connection with recruiting or obtaining records from or about any plaintiff or potential plaintiff" (*id.* at 15). At the insistence of Judge Sippel in the Eastern District of Missouri, the Subpoena was limited to records concerning plaintiffs whose claims were actually filed and later dismissed. *See id.* at 12.

Given the litigation focus of the Subpoena, the district court should have recognized that any responsive records reflected on the Careaga Privilege Log were by necessity protected work product, as they were "documents prepared by counsel or parties, or their representatives, in specific preparation for a filed

5

lawsuit." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 641 (S.D. Fla. 2011). If they had truly been generated solely for "a business development purpose … as opposed to in anticipation of litigation," as the district court found (Doc. 78 at 17), the documents would not have been responsive to the Subpoena and need not have been logged or produced at all. *See, e.g.*, *Bartram, Ltd. Liab. Co. v. Landmark Am. Ins. Co.*, No. 10-00028, 2011 U.S. Dist. LEXIS 10100, at *7-8 (N.D. Fla. Jan. 24, 2011) (documents not covered by work-product privilege were still not compelled because they were not relevant to the case).

### B.    The Careaga Privilege Log and affidavits of counsel supplied the necessary factual basis to support work-product protection.

Considering the Subpoena's clear demand for documents created in connection with the Missouri Lawsuits, the district court should have found the Careaga Affidavit (Doc. 54-1), the Careaga Privilege Log (Doc. 57-1), and the Halpern Affidavit (Doc. 66-1) sufficient to establish that the logged documents were all "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). "[W]hen the circumstances suggest that a document might be privileged, it is important that the district court consider the totality of those circumstances in making its determination as to whether the privilege must be recognized." *In re Grand Jury Proceedings*, 220 F.3d 568, 572 (7th Cir. 2000).

It is untrue that the Careaga Privilege Log "was so vague and lacking in detail" that the court had "no meaningful way" to analyze the privilege claims.

6

*Contra* Dkt. 51 at 31. The Log described each file Careaga identifed as responsive to the Subpoena, including file number, page length, date (if known), document type, preparer or signator, recipient, a brief description of the subject matter, and the claimed privileges. *See* Doc. 57-1. It also expressly linked all of the logged documents to the "litigation against Doe Run and Renco." *Id.* While the Log may not have been as detailed as the district court would have preferred, "a privilege log is a means to an end and not an end in itself; the ultimate question is whether the documents are protected by the privilege." *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208, 2011 U.S. Dist. LEXIS 74148, at *15 (S.D. Fla. July 11, 2011) (citations and marks omitted).

Given the context of this case, where an attorney's litigation files have been subpoenaed by his litigation opponents, the Log provided more than "enough information" about each document for the Court and Petitioners to determine that "the claimed privilege might apply." *Cf. Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1293 (S.D. Fla. 2012); *see generally* Fed. R. Civ. P. 26(b)(5). At a minimum, Halpern should have been given a chance to amend the privilege log to satisfy the district court's concerns. When courts believe that a privilege log is deficient, they have "several options, including affording an opportunity to amend." *Siegmund v. Bian*, No. 16- 62506, 2018 U.S. Dist. LEXIS 130337, at *23 (S.D. Fla. Aug. 1, 2018).

Halpern's privilege claims were also buttressed by the Careaga Affidavit. Petitioners assail the Affidavit as "patently insufficient … to support the assertion of work product privilege" because it "largely described unprotected endeavors and documents in a generalized way." Dkt. 51 at 24. But this vague criticism is untenable. The Affidavit established that Careaga began investigating the potential of filing a lawsuit against Petitioners in 2006; traveled to Peru that same year to sign up clients; brought suit in Missouri shortly thereafter on behalf of those clients, with Halpern and Schlichter Bogard as co-counsel; and remained as co-counsel on the cases until 2013. *See* Doc. 78 at 15-16. Petitioners have never contested these basic facts. *See* Doc. 1 at 4. The district court further found that, according to his Affidavit, Careaga "was acting in his capacity as a licensed attorney when the documents were created in anticipation of litigation against Petitioners in the Eastern District of Missouri." Doc. 78 at 15.

Finally, the court also had the Halpern Affidavit, which Petitioners do not address. That evidence further established that Careaga was part of a team of attorneys who "first investigated and developed the plaintiffs' claims for court, beginning in approximately 2006." Doc. 66-1 at 1 (¶ 3). Mr. Halpern confirmed that he assisted in the preparation of the Careaga Privilege Log and personally reviewed the documents listed thereon. *See id.* at 1-2 (¶¶ 4, 8). He also averred that "at least 10 of the files" on the Log "contain information specific to at least

8

one of the 49 plaintiffs already dismissed from the *Reid* cases," while the logged

documents also reflected attorney work product and privileged attorney-client

communications "pertaining to hundreds of *current* plaintiffs in the *Reid* cases[.]"

*Id.* at 2 (¶¶ 8-9) (emphasis in original). This was additional evidence establishing a

clear connection between the logged documents and the Missouri litigation.

**C.    Documents reflecting Careaga's efforts to recruit plaintiffs for the litigation should have been protected as work product.**

Petitioners argue that Careaga's "client recruitment" efforts were "strictly

for business purposes," and that work-product protection should not attach to

documents "created for solicitation." *See* Dkt. 51 at 25-26 (citing inter alia *In re*

*3M Combat Arms Earplug Prods. Liab. Litig.*, No. 19-2885, 2021 U.S. Dist.

LEXIS 46591, at *19 (N.D. Fla. Mar. 12, 2021)). But this was the erroneous

finding in the district court, where the magistrate judge appears to have been

distracted by Careaga's use of the term "client."[1] *See* Doc. 78 at 16-17. In his

Affidavit, Careaga explained that he began making trips to Peru in 2006 "in

anticipation of litigation," and that he signed up hundreds of clients "to become

plaintiffs in Missouri litigation[.]" Doc. 54-1 at 3 (¶ 9). Clearly, the sole purpose

---

[1] In a footnote, Petitioners argue that "the very essence of the Peruvian investigation" concerns the "means and methods by which the law firms recruited clients or, put another way, 'developed business.'" Doc. 51 at 26 n.5. Notably, the word "client" does not appear in Petitioners' Section 1782 application (Doc. 1) or in Section III of the Subpoena, which describes the documents to be produced (*see* Doc. 51-1 at 12-15). Instead, both documents refer to "*plaintiff* recruitment."

of his travels to Peru and his communications with other U.S. lawyers was to initiate lawsuits against Petitioners.

While a lawyer's solicitation of "remunerative employment" may constitute "a business transaction" (Dkt. 51 at 25 (quoting *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 457 (1978))), the process of informing injured persons of their rights and engaging them to file a lawsuit is a common and often necessary part of an attorney's pre-suit investigation. Documents generated by a party or its representative in connection with that process fall within the ambit of Rule 26(b)(3). *See Drummond Co.*, 885 F.3d at 1334-35 ("Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation."); *cf. Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1116 (11th Cir. 2008) (letters seeking witnesses for ongoing lawsuits were likely covered by the work-product privilege).

That the lawyer may hope someday to be compensated for his efforts does not eviscerate the privilege. *Cf. In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) ("If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection."). "[E]ven if a document has some purpose within the ordinary course of business, the document is protected as work product if it is substantially infused

10

with litigation purpose." *Chase v. Nova Se. Univ., Inc.*, No. 11-61290, 2012 U.S. Dist. LEXIS 83815, at \*17 (S.D. Fla. June 18, 2012) (quoting *Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*, No. 06-21267, 2007 U.S. Dist. LEXIS 49994, at \*6 (S.D. Fla. July 11, 2007)).

The *3M* case relied on by Petitioners presented a different situation. There, the contested documents were communications between the plaintiffs' lawyers and a marketing firm relating to generic advertisements. These were found not to be protected work product because they were "created for the business purposes (marketing and advertising) of the attorneys…, not in anticipation of impending litigation for a particular plaintiff." *In re 3M*, 2021 U.S. Dist. LEXIS 46591, at \*19. Here, by contrast, there was no marketing firm or generic advertising. The contested documents were all prepared by or for attorneys in connection with their efforts to file lawsuits against Petitioners on behalf of particular plaintiffs. *See generally* Doc. 54-1 at 2-3. The Log includes documents reflecting the plaintiffs' names and dates of birth, draft pleadings, and correspondence among the attorneys concerning their clients and the litigation. *See* Doc. 57-1. Petitioners cite no case that would exclude such materials from the definition of work product. Nor do they identify any logged documents that could be considered "business and marketing materials." Dkt. 51 at 19.

11

**D.    Receipts and expense reports also merited work-product protection.**

The court further erred by not affording work-product protection to the expense reports, payments, and receipts reflected on the Log. *See* Doc. 78 at 17 (finding that no explanation had been advanced tying those records to anticipated litigation). For example, File 24 contains attorney correspondence regarding expense reports and receipts for "[c]onfidential travel expenses for Peru trips in Nov. 2007, Dec. 2007 and Jan. 2008 related to clients and lawsuit." Doc. 57-1 at 1. These records fall under Subpoena request No. 19, which seeks "[a]ny and all records of travel by you or by any U.S. Law Firm to Peru in connection with recruiting or obtaining records from or about any plaintiff or potential plaintiff, including but not limited to airline tickets, payment records, and correspondence regarding the travel." Doc. 51-1 at 15.

The only conceivable relevance those records could afford Petitioners would be to offer a window into their opposing counsel's pre-suit investigation, including which attorneys were present in Peru at certain times, where they went, which records they obtained, and with whom they communicated. Such information would tend to reveal litigation strategies, and the court should not have ordered their production absent a showing of substantial need or application of the crime-fraud exception. *Cf., e.g.*, *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, No. 06-2233, 2008 U.S. Dist. LEXIS 8789, at *7-8 (E.D.N.Y. Feb. 6, 2008)

12

(defendants were not entitled to access sales receipts that would reveal plaintiff's litigation strategy); *York Grp., Inc. v. Pontone*, No. 10-1078, 2012 U.S. Dist. LEXIS 193838, at *35 (W.D. Pa. Aug. 6, 2012) (travel expenses and related communications between attorneys and their client's former corporate officer concerning the litigation were protected attorney work product).

There is no blanket rule that exempts "financial records" from the work product doctrine. *Contra* Dkt. 51 at 27. The cases Petitioners rely on for that proposition are unsupportive and inapposite. *In re Grand Jury Investigation* involved a grand jury subpoena directed to an "attorney's actions as banker and business advisor for his client." 769 F.2d 1485, 1487-88 (11th Cir. 1985). The case had nothing to do with travel records and expenses associated with litigation. The *Chemoil* case involved requests for documents pertaining to certain corporate payments that were produced in the ordinary course of business. *See Chemoil Corp. v. MSA V*, No. 12-472, 2013 U.S. Dist. LEXIS 33888, at *9 (M.D. Fla. Mar. 12, 2013). "The mere possibility" that those normal business transactions "might lead to future litigation" was not enough to qualify them as work product. *See id.*

The work-product doctrine exists to safeguard "the privacy of [an attorney's] professional activities." *Hickman v. Taylor*, 329 U.S. 495, 513 (1947). The purpose is "to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion

13

by opposing parties and their counsel.'" *Drummond Co.*, 885 F.3d at 1335

(quoting *Hickman*, 329 U.S. at 510). By ordering the travel expenses and receipts

to be turned over to Petitioners, the district court failed to effectuate that purpose.[2]

## III. The district court abused its discretion by not considering each document or class of documents separately.

The court's all-or-nothing approach to Halpern's privilege assertions was an

abuse of discretion. In this circuit, "a district court faced with privilege objections

should consider the material 'on a document-by-document basis' to determine

whether each is privileged." *Drummond Co. v. Collingsworth*, 816 F.3d 1319,

1327-28 (11th Cir. 2016) ((quoting *In re Grand Jury Subpoena*, 831 F.2d 225

(11th Cir. 1987))). Petitioners attempt to distinguish this case on the grounds that

it involved application of the crime-fraud exception, which they suggest required

"heightened scrutiny." *See* Dkt. 51 at 33 (citing *Drummond Co. v. Conrad &*

*Scherer, LLP*, 885 F.3d 1324 (11th Cir. 2018)). However, they are confusing two

cases with a similar name. The *Collingsworth* decision involved straightforward

application of the work-product doctrine.

---

[2] Petitioners misquote the district court as finding that "the documents were 'obviously not created in anticipation of litigation.'" Dkt. 51 at 28 (quoting Doc. 106 at 10 n.3). The court actually wrote "not obviously" rather than "obviously not." *See* Doc. 106 at 10 n.3. That finding also pertained to a different privilege log, not the Careaga Privilege Log. *See id.*

14

Petitioners similarly fail to distinguish *In re Grand Jury Subpoena*. The opinion had nothing to do with grand jury secrecy. *Contra* Dkt. 51 at 33-34. Rather, the lower court was deemed to have erred when it granted a blanket request for the subpoenaed records to be withheld under the attorney-client privilege without conducting an individualized analysis. 831 F.2d at 226. While the circumstances here are somewhat flipped, the same principle applies. Just as "the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents," 831 F.2d at 227 (quoting *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982)), so also the blanket of protection afforded by the work-product privilege should not be summarily ripped away from an attorney's entire case file without due consideration of its contents.

Had the court properly undertaken an individualized assessment of Halpern's privilege claims, it should have granted Halpern's motion for a protective order, at least in part. According to Petitioners, the Log "failed to meet even the minimal standard of specificity required to trigger such an analysis" (Dkt. 51 at 32), but their position is wholly unsupported. File 18, for example, was described on the Careaga Privilege Log as a three-page communication dated October 20, 2006, authored by Mr. Halpern and received by Schlichter Bogard, regarding "confidential client information" and the "litigation against Doe Run and Renco." Doc. 57-1 at 2. Given the wider context of the proceeding, the court

15

should have discerned from that entry that the document was probably privileged. Likewise, File 24 described undated draft petitions for the appointment of next friend authored by a Schlichter Bogard attorney in connection with the same litigation. *See id.* at 3. It is hard to understand how the court could fail to afford work-product protection to those documents. *See Hall v. Balt. Police Dep't*, No. 24-1137, 2025 U.S. Dist. LEXIS 26704, at *36 (D. Md. Feb. 13, 2025) (observing that draft pleadings are "quintessential work product").

The magistrate judge erred by rejecting Halpern's privilege claims simply because some of the Log entries "bore no apparent relation to" Careaga's trips to Peru. *See* Doc. 78 at 16. The Careaga Affidavit established that Careaga and Mr. Halpern began "investigating the potential claims of residents of La Oroya, Peru" in "early 2006," before those trips began. *See* Doc. 54-1 at 2 (¶ 7). The Affidavit further established that Careaga and Mr. Halpern joined with Schlichter Bogard in late 2006 "to institute legal action in Missouri" against Petitioners. *Id.* at 3 (¶ 10). And Halpern "continued to work in a co-counsel capacity with [Schlichter Bogard] and Mr. Halpern on an uninterrupted basis from 2006 until April, 2013[.]" *Id.* at 3 (¶ 11). This was enough information for the court to understand the context surrounding the "draft pleadings, communications among attorneys, and lists of client names and other Peruvian individuals" reflected on the Log. *See*

Doc. 78 at 16. Surely, it was not an "impossible task" for the court to discern that these materials "might be privileged." *Contra* Dkt. 51 at 32.

## IV. The district court should have examined the documents *in camera*.

Under the facts and circumstances of this case, it was an abuse of discretion for the district court to deny all privilege protections to the Halpern Contested Documents without at least "conducting a hearing or inspecting the documents *in camera*." *See In re Grand Jury Subpoena*, 831 F.2d 225, 228 (11th Cir. 1987). The documents themselves were the best evidence of Halpern's privilege claims, and the court refused to look at them. *See* Doc. 106 at 18. "District courts should be highly reluctant to order disclosure without conducting an *in camera* review of allegedly privileged materials." *In re BankAmerica Corp. Secs. Litig.*, 270 F.3d 639 (8th Cir. 2001); *cf. Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1268-69 (10th Cir. 1999) (finding error in privilege determination where lower court "did not in fact examine specific documents or classes of documents" before ruling).

The magistrate judge indicated at the July 31, 2023 hearing that she did not want to conduct an *in camera* review but would do it upon a plausible assertion of privilege. "[I]f I have to do this *in camera*, I will. I don't want to, and I'm not going to until I at least see the cards on the table that say if everything they say is true, then at least there's an assertion of privilege. *In camera* should be reserved for, yes, but we're not 100 percent sure that those characterizations are correct. So

17

we have to at least get there." Doc. 64 at 39-40. This was another way of saying that Halpern needed to provide "some evidence to convince the court that the privilege might apply." *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 585 (S.D. Fla. 2013); *accord* Doc. 106 at 17.

As shown, Halpern met the requisite threshold to trigger an *in camera* review. All of the evidence pointed to a finding that the documents on the Careaga Privilege Log were "prepared or obtained because of the prospect of litigation," necessitating work-product protection. *See Developers Sur.*, 2007 U.S. Dist. LEXIS 49994, at *6 (citation omitted). "[A] full *in camera* review of the log documents would have been 'a highly appropriate and useful means of dealing with' the sensitive privilege issues in this case." *Am. Nat'l Bank & Tr. Co. v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 880 (7th Cir. 2005) (quoting *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 406 (1976)).

If nothing else, the district court should have examined the two-page letter described as "attorney correspondence with client" (*see* Doc. 57-1 at 3 (File 27)), which Halpern represented to be "a confidential communication from attorneys to their clients for the purpose of providing legal advice and assistance" (Doc. 81 at 9). Such a minimal step was necessary "to guard against the possibility that certain specific documents" subject to the Subpoena "may be protected by the attorney

client privilege." *Mayfair House Ass'n v. QBE Ins. Corp.*, No. 09-80359, 2010 U.S. Dist. LEXIS 151401, at *23-24 (S.D. Fla. Jan. 5, 2010).

## CONCLUSION

The attorney-client and work-product privileges are "deeply important and must be respected." *United States v. Korf*, 11 F.4th 1235, 1249 (11th Cir. 2021). At the same time, "deposing opposing counsel in the midst of an ongoing proceeding is 'generally offensive to our adversarial system'" – "an extraordinary step that will rarely be justified." *Nat'l Union Fire Ins. Co. v. Fla. Crystals Corp.*, No. 14-81134, 2016 U.S. Dist. LEXIS 195345, at *11 (S.D. Fla. Apr. 12, 2016) (citation omitted). Reversal is necessary to ensure these principles are followed in the proceedings below.

March 10, 2025                    Respectfully submitted,

                                 */s/ Nathan D. Stump*
                                 Nathan D. Stump
                                 Schlichter Bogard, LLC
                                 100 South 4th Street, Suite 1200
                                 St. Louis, MO 63102
                                 (314) 621-6115
                                 nstump@uselaws.com
                                 *Attorneys for Intervenor-Appellant*
                                 *Halpern Santos & Pinkert, P.A.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Reply Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) as it was prepared using a computer and contains 4,438 words in a proportionally spaced typeface (Times New Roman, 14 point), double-spaced with one-inch margins on all four sides.

I further certify that this brief has been scanned for viruses and is virus-free.

*/s/ Nathan D. Stump*
Nathan D. Stump

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the Reply Brief of Intervenor-Appellant Halpern Santos & Pinkert, P.A. with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_/s/ Nathan D. Stump_
Nathan D. Stump

21